DECISION
Plaintiffs appeal a Notice of Deficiency issued by the Defendant, dated August 26, 2008, for tax year 2005. A trial was held in the Oregon Tax Courtroom, Salem, Oregon, on Monday, June 15, 2009. Greg Ripke (Ripke), Certified Public Accountant, appeared on behalf of Plaintiffs. Plaintiff Mildred R. Hansen (Hansen), testified on behalf of Plaintiffs. Dane Palmer, Auditor, appeared on behalf of Defendant.
Plaintiffs' Exhibits 1-15 and Defendant's Exhibits A-J were offered and received by the court without objection.
 I. STATEMENT OF FACTS
Since February of 2001, Hansen has operated a licensed residential care facility out of her home in Veneta, Oregon. Hansen testified that the facility is an adult foster home, and she is licensed to care for up to five individuals. Hansen testified that her license is "Class II," meaning that she has completed training requirements and can care for residents who require assistance with all activities of daily living, but are not dependent in more than three of those activities. (Ptfs' Exs 14-3; 14-4.) Hansen further testified that she has received an exception *Page 2 
to care for one "Class III" resident. A Class III resident is dependent in four or more activities of daily living. (Id.)
Aside from the five residents of the adult foster home, Plaintiffs — Mildred Hansen and her husband, David Hansen — their son, and one tenant resided in the home in 2005. Hansen testified that the tenant is licensed to be a caregiver in her facility and traded room and board for caregiving services during 2005. Hansen also testified that her son traded labor for room and board during 2005. Hansen's son engaged in maintenance and landscaping activities while working for Hansen. (Ptfs' Ex 7-17.) Hansen's son was born on May 22, 1987; he turned eighteen during May of 2005. (Id.) At trial, Defendant contended that the exchange arrangements with both the tenant and Hansen's son were barter income.
In 2005, in addition to the nine individuals who resided in the home, Hansen testified that numerous animals also resided on the property, including pigs, rabbits, dogs, and cats. Although all the animals residing on the property belong to the Plaintiffs, Hansen testified that certain animals, such as the dogs and to some extent the cats and rabbits, were therapy animals for the benefit of the residents.
The home is located on about 40 acres of land with several outbuildings including 2 barns and a workshop. (Ptfs' Ex 12-3.) A well, the property's water supply, is located in one corner of the property. Hansen testified that water is in short supply in the area where she lives and that she requires the 40 acres of land to obtain enough water to sustain her home business. Hansen testified that the property also has a pond the residents may use for fishing.
Plaintiffs filed a self-prepared joint state income tax return for 2005. Hansen testified that she used Turbo Tax to prepare the return and, due to her misunderstanding of the software's prompts, mistakenly calculated that she had no taxable income. Hansen retained Ripke to assist *Page 3 
recalculating her income for Defendant's audit. That recalculation was complicated by disorganized recordkeeping, unsubstantiated cash transactions, and a computer malfunction that destroyed some of Hansen's accounting records.
Hansen and Defendant agree that Hansen's gross receipts were $149,022 for tax year 2005. (Def's Ltr, Feb 26, 2009.) Hansen and Defendant disagree on recordkeeping and substantiation requirements. Defendant contended that, without matching receipts or invoices, Hansen's expenses are unsubstantiated. Hansen offered bank statements, cancelled checks, invoices and ledgers she and Ripke prepared attempting to reconstruct Hansen's 2005 accounting records to substantiate claimed expenses. (Ptfs' Exs 5-1 through 5-28; 6-1.) Defendant's exhibits included receipts previously submitted by Hansen to Defendant. (Def's Exs G-9 through G-431.)
Hansen and Defendant continue to disagree as to allowable amounts for deductions for business expenses (Schedule C) and personal expenses (Schedule A). Defendant challenged Hansen's claimed transportation expenses, depreciation on the home and outbuildings, casual labor costs, "comfort dog" expenses, insurance expenses, repair costs, supply costs, food and household supply costs, mortgage interest expenses, property tax expenses, utility expenses, landscaping expenses, license expenses, and personal medical expenses. In addition, Hansen and Defendant continue to disagree about the allocation of certain expenses between business and personal use. *Page 4 
A. Business Expenses Incurred by Hansen
1. Transportation Expenses
Hansen claims transportation expenses of $2,079 for the 2005 tax year.[1] According to Ripke, Hansen's transportation expenses are based on mileage for her estimated 121 trips to Eugene in 2005. Ripke estimated each trip from Hansen's home to Eugene is 40 miles. He then multiplied that total annual mileage by the standard mileage rates, which were split for 2005. (Ptfs' Exs 9-1; 4-114.) Ripke based that calculation on a review of Hansen's bank statements, where she noted charges to her account that came from businesses located in Eugene. Hansen has one car that is used exclusively for business. (Ptfs' Comp at 5.) Hansen also testified that she does not keep a mileage log in her vehicle and that all her trips to Eugene were primarily for business and not for personal reasons.
Defendant disagrees with Hansen's calculation. Defendant allowed $1,385 in transportation expenses.[2] (Def's Ex G-2.) That is the original amount claimed by Hansen on her 2005 tax return. (Id.) Defendant allowed this amount based on the nature of Hansen's business, even though Hansen did not provide substantiating documentation. (Id.)
2. Casual Labor
Hansen claims a business expense deduction of $5,340 for casual labor. (Ptfs' Exs 13-1; 13-2.) Hansen testified that she had a few additional people working in her care facility in 2005. Hansen testified that she would pay those workers in cash by making withdrawals from an automated teller machine (ATM), paying her workers at a rate of approximately $8 per hour. *Page 5 
Hansen recorded the days and number of hours worked by each person on her calendar. (Ptfs' Exs 13-14 through 13-18.) Hansen issued a Form 1099 to one of her workers. (Ptfs' Ex 13-3.) Defendant allowed no business deduction for casual labor expenses because Hansen did not offer substantiating documentation. (Def's Ex G-2.)
3. Supplies
Hansen claims a business expense deduction of $6,506 for (non-household) supplies for her business. (Ptfs' Ex 5-26.) Defendant allowed no deduction for supplies expenses because Hansen did not offer substantiating documentation. (Def's Ex G-4.)
4. License Expenses
Hansen claims a business expense deduction of $150 for license fees. (Ptfs' Ex 5-11.) Defendant allowed a $100 business expense deduction for Hansen's Oregon adult foster home license fee. (Def's Ex G-4.)
5. Depreciation
Hansen claims a business expense deduction of $7,463 for depreciation of her home and outbuildings. (Ptfs' Ex 12-2.) That value is Ripke's estimate of depreciation based on building and outbuilding values from a property appraisal report. (Ptfs' Ex 12-3.) Ripke acknowledged possible errors in his methodology at trial because he divided a $60,000 value listed on the appraisal equally between three outbuildings when he calculated depreciation on those buildings. The appraisal report indicates that this $60,000 value includes not just the outbuildings, but other fixtures such as the deck and patio. (Id.) Defendant allowed $5,927 for depreciation. (Def's Ex G-2.) Defendant based that calculation on the property's improvement value of $231,153, divided by a 39 year life. (Id.) At trial, Defendant explained that the $231,153 value *Page 6 
for the property was obtained from the county assessor's records. Both parties agree that the final determination of depreciation must then be allocated between business and personal use.
6. Property Insurance
Hansen claims a business expense deduction of $851 for the cost of property insurance. (Ptfs' Ex 5-11.) Defendant allowed an insurance deduction of $1,082 based on billing evidence submitted by Hansen. (Def's Ex G-6.) Both parties agree that the deduction for property insurance will need to be allocated between business and personal use.
7. Repairs
Hansen claims a business expense deduction of $15,611.81 for repair costs. (Ptfs' Exs 11-3 through 11-6.) Hansen testified that, in 2005, Plaintiffs added a drain field to the property, made plumbing repairs, and added a new roof. Defendant allowed $1,300 for septic repair costs. Defendant disallowed many of Hansen's expenses because the invoices provided were issued to "Hansen Brothers Construction" and not specifically Hansen or her business. (Def's Ex G-3.) Hansen contends that she and "Hansen Brothers Construction" are one in the same. (Ptfs' Compl at 8.) Both parties agree that the repair costs will need to be allocated between business and personal use. Neither party testified whether any of the repair expenses were actually capital expenditures rather than repairs.
8. Property Taxes
Both parties agree that Hansen paid $729 for property taxes. (Ptfs' Ex 5-22; Def's Exs G-4 and G-5.) Both parties also agree that this amount will need to be allocated between business and personal use. *Page 7 
9. Mortgage Interest
Both parties agree that Hansen paid $35,411 in mortgage interest for 2005. (Def's Ex G-6.) Both parties further agree that Hansen's deduction of mortgage interest will need to be allocated between business and personal use.
10. Landscaping
Hansen claims a business expense deduction of $1,000 for landscaping costs. (Ptfs' Ex 5-11.) Hansen testified that she is required by the state to keep the property up to acceptable standards including maintenance of walkways on the property. Defendant has not addressed those expenses directly. Neither party discussed whether this expense is subject to allocation.
11. Food and Household Supplies
Hansen claims a deduction of $26,610 for food, household supplies, and takeout meals for the residents. (Ptfs' Exs 4-2; 5-5 through 5-11; 7-3.) Hansen testified that she keeps two pantries and two refrigerators of food in her home — one for personal use and one for the needs of the residents, as required by the state for maintaining an adult foster home. She does not, however, do separate grocery purchasing. Hansen and Defendant both would divide Hansen's total food and household supply expenses per person, but the parties continue to disagree about how many of the home's nine residents qualify for a business deduction. (Ptfs' Ex 7-3; Def's Exs G-5; G-6.) Defendant allowed substantiated food and household supply expenses of $13,832. (Def's Exs G-5; G-6.) Defendant also submitted government statistics regarding the cost of food. Those statistics provide that, in 2005, the average annual cost of food for 2.5 individuals was $5,931. (Def's Ex G-374.) At trial, Defendant directed the court to several inaccuracies in the food and household supply ledgers prepared by Hansen. Defendant demonstrated that some of the expenses Hansen coded as food and household supplies consisted *Page 8 
of debit transactions with cash-back, compact disc purchases, clothing purchases, and fishing equipment purchases. (Def's Exs G-212; G-88; G-293; G-68; G-210; G-209.) Hansen testified that she used the cash-back to pay her workers, thus, although the expenses were erroneously coded, they still constituted business expenses. Hansen further testified that the compact discs were a form of compensation for her employee son. Hansen testified that the clothing and fishing supplies were for her residents and thus business expenses.
12. "Comfort Dog" Expenses
Hansen claims a business expense deduction of $1,861 for "comfort dogs" that she attributes to expenses for two dogs that live at the property. (Ptfs' Ex 6-1.) Hansen testified that the residents benefit from the presence of the dogs, especially because, when residents come to her facility, they must give up their pets. Hansen testified that neither the residents nor the state licensing officials had ever had any issues with the dogs. Hansen testified that the dogs had not undergone any training or certification as therapy animals. Hansen also testified that, in 2005, she kept rabbits on the property for the benefit of the residents, but that she had to get rid of them.
Defendant allowed no business deduction for "comfort dog" expenses. At trial, Defendant challenged the reliability of Hansen's "comfort dog" expense documentation. Defendant showed that expenses Hansen coded as "comfort dog" also encompassed expenses for straw, rabbit food, and pig food. (Def's Ex G-367.) Defendant demonstrated at trial that Hansen had a history of personally keeping dogs on the property prior to operating her adult foster home. Defendant contends that the dogs are Hansen's personal pets, thus expenses for these animals are not properly deductible as business expenses. *Page 9 
13. Utility Expenses
Hansen claims a business expense deduction of $7,674 for utility expenses. (Ptfs' Exs 5-26 through 5-28.) That total represents expenses for garbage, electric, internet, cable television, a landline telephone, and a cellular phone. Hansen testified that she is required by state licensing standards to maintain a landline telephone at her residence. Hansen also testified that she used the internet service for her business by communicating online with her residents' doctors for medication management purposes — she explained that the doctors use this method of communication in order to keep a record of their instructions. Hansen has not made any allocations for the mixed business and personal use of any of the utilities, but agrees some allocation is necessary.
Defendant allowed $4,469 for substantiated expenses for electricity. Defendant would then allow a business use allocation of 70 percent business use based on the significant amount of laundry required by Hansen's business. (Def's Ex G-4.) Defendant also allowed substantiated expenses for garbage of $748 and $1,242 for cable, however, Defendant believes these expenses should be allocated by a 5:9 occupancy ratio. Defendant has not allowed other utility expenses. (Def's Ex 6-5.)
B. Allocation Methods Applicable to Hansen's Business Expenses
Some of Hansen's claimed deductions are for direct expenses — those expenses that are exclusively related to her business. Other business expense deductions claimed by Hansen must be allocated between business and personal use to reach a final allowable business expense.
Hansen and Defendant agree that some of the expenses — such as Hansen's property taxes, mortgage interest, depreciation, property insurance expenses, and repair costs — should be allocated based on a ratio of square footage of home used for business to total square footage of *Page 10 
the home. (Ptfs' Exs 10-3; 10-4; Def's Ex G-6.) Hansen calculates the total square footage of her home to be 3,662 square feet. (Ptfs' Ex 10-3). Defendant relied on the assessor's records for a square footage calculation of 3,128. (Ptfs' Ex 10-1). Hansen and Defendant disagree about the proper calculation of this ratio. Hansen contends that 93.45 percent of her home is used for business, excluding only the bedroom she shares with her husband. (Ptfs' Ex 10-3.) Defendant contends that 61.8 percent of the square footage of Hansen's home is used for business. (Def's Ex G-6.) Based on his visit to Hansen's home, Defendant observed that the residents did not use the basement of the home and that the bedrooms downstairs belonged to the Hansen's son and the tenant. (Id.) Defendant thus excluded the basement from business use of the home. (Id.) Hansen testified that the exclusive laundry facilities for her business are located in the basement. Hansen testified that both her son and the tenant were employees of her business, maintaining that both of their living quarters were properly characterized as business use of her home.
Alternatively, some of Hansen's business expenses may be allocated based on the number of occupants in her home, such as groceries and household supplies, and a portion of the utility expenses. The parties agree that the home had nine occupants in 2005, but disagree as to the number of occupants that qualify for business expense deductions. Hansen determined that seven of the nine occupants were properly related to the business, a ratio of 7:9. (Ptfs' Ex 7-3.) Those seven people were the five residents, Hansen's son and the tenant. (Id.) Defendant determined that only five of the occupants — the adult foster home residents — comprised the business-related occupants of the home, a ratio of 5:9. (Def's Exs G-5; G-6.)
C. Personal Medical Expenses
Hansen claims a personal deduction for medical expenses in the amount of $10,334. (Ptfs' Exs 8-1 through 8-3.) In response to questioning about her medical expenses, Hansen *Page 11 
testified that she is a breast cancer survivor and that she engaged in follow up care for her illness in 2005. Ripke testified that he attempted to reconcile his medical expense ledgers with the expenses allowed by Defendant's audit explanation.
Defendant allowed $8,059 in substantiated personal medical expenses. (Def's Ex H-1.) Defendant contests the reliability of Hansen's medical expense ledger.
D. Hansen's Oral Request for the Court to Waive Penalties and Interest
At trial, Hansen made an oral request that the court waive the understatement penalties and interest assessed by Defendant. Defendant assessed Plaintiffs a 20 percent substantial understatement penalty under ORS 314.402(4)(b). (Def's Exs J-1 and J-2). The total amount of this understatement penalty is $1,339. (Def's Ex J-2).
 II. ANALYSIS
As this court has previously noted, "[t]he Oregon Legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified by Oregon law. ORS 316.007."[3]Ellison v. Dept. of Rev., TC-MD No 041142D, WL 2414746 *6 Sept 23, 2005). As a result, the legislature adopted, by reference, the federal definition for deductions, including those allowed under section 162 of the IRC[4] for trade and business expenses, [5] and IRC section 212
nonbusiness expenses incurred in the production of income.[6] *Page 12 
The federal definition of allowable deductions that are at issue in this case is found in IRC section 162(a).
Allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction. INDOPCO, Inc. v. Comm'r, 503 US 79, 84,112 SCt 1039, 11 LEd 2d 226 (1992). See also ORS 305.427 (providing that the burden of proof in the Tax Court is a preponderance of the evidence and falls upon the party seeking affirmative relief).
As a general rule, IRC section 262(a) prohibits the deduction of most personal and family expenditures, while IRC section 162(a) allows the deduction of "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." To be "ordinary" the transaction that gives rise to the expense must be of a common or frequent occurrence in the type of business involved. Deputy v. Du Pont,308 US 488, 495, 60 SCt 363, 84 LEd 416 (1940). Hansen operates a residential care facility out of her home. Due to the nature of Hansen's business, her personal and business expenditures, such as grocery items, appear very similar and are somewhat commingled. The case is further complicated by the need to use multiple allocation methods. Hansen's direct expenses, those that solely benefit her business, may be deducted at 100 percent. Hansen's indirect business expenses, those that benefit both the business and Hansen personally, must be allocated between business and personal use; Hansen is only allowed to deduct the percentage of the expense that is for business use.
The court will first address Hansen's room and board exchanges with her son and tenant and will then address allowable business expenses and allocation methods considering the testimony and exhibits submitted. *Page 13 
A. Room and Board Exchanges
During 2005, Hansen exchanged services for room and board with both her tenant and her son. At trial, Defendant contended that these arrangements constituted barter income. IRC section 61 provides that "gross income means all income from whatever source derived," thus an exchange of labor for services would be income to Hansen's son and tenant.
1. Hansen's Son — A Minor
Hansen testified that her son provided services in exchange for room and board in 2005. Hansen indicated that her son provided grounds keeping services as well as assisting with some maintenance in the house, such as painting and floor repairs. (Ptfs' Ex 7-17). Hansen did not report the value of the services rendered as business income.
The value of meals and lodging furnished by a parent to an unemancipated minor child are not includible in the gross income of the child, nor deductible as wages by the parent, even when the child is a bona fide employee of the parent. Rev Rul 73-393, 1973-2 CB 33. IRC section 262 generally prohibits the deduction of personal, living and family expenses. A parent is legally liable for the support and maintenance of the parent's minor children, thus the cost of meals and lodging which the parent furnishes to the children constitutes a personal expense. The cost of meals and lodging furnished by a parent to the parent's unemancipated minor child are a personal expense of the parent even though an employer-employee relationship exists between them. Rev Rul 73-393, 1973-2 CB 33.
In Oregon, the age of majority (emancipation) is 18 years. ORS 109.510. Hansen's son turned 18 years-old during May of 2005, at which time he was emancipated. (Ptfs' Ex 7-17). *Page 14 
Thus, until Hansen's son reached the age of 18, none of the expenses incurred in providing him with meals and lodging are deductible as they are Hansen's personal expenses for her unemancipated child.
2. The Tenant and Hansen's Son as an Adult
After the age of 18, the food and lodging expenses for Hansen's son are analyzed like those expenses claimed for Hansen's tenant. Hansen testified that the tenant who resided in the adult foster home was there primarily to work for Hansen. She further testified that the tenant was licensed to work in the adult foster home as a caregiver to the residents. Hansen claims that the meals and lodging provided to her son and the tenant were compensation for their services, however, she did not issue the applicable tax forms to enable either one of them to report that compensation as income. The value of living quarters or meals that employees receive in addition to their salaries constitutes gross income unless the meals and living quarters are furnished for the convenience of the employer and the conditions specified in IRC section 119 are met. Treas Reg section 1.61-2(d)(3). "Meals furnished by an employer without charge to the employee will be regarded as furnished for the convenience of the employer if such meals are furnished for a substantial noncompensatory business reason of the employer." Treas Reg section1.119-1(a)(2)(i). Hansen testified that the meals were in compensation for services, thus she may not establish the employer convenience provisions of IRC section 119 with regard to these meals.
In order to exclude lodging provided by the employer from an employee's gross income, the lodging must meet three tests. First, "[t]he lodging is furnished on the business premises of the employer." Second, "[t]he lodging is furnished for the convenience of the employer." Third, "[t]he employee is required to accept such lodging as a condition of his employment." Treas *Page 15 
Reg section 1.119-1(b)(1)-(3). "The requirement * * * that the employee is required to accept such lodging as a condition of his employment means that he be required to accept the lodging in order to enable him properly to perform the duties of his employment." Treas Reg section 1.119-1(b). Nothing in the facts of the case indicates that the general maintenance services provided to Hansen by her son required that her son reside at the home in order to properly perform the duties of his employment.[7]
The court finds that neither the meals nor the lodging provided to Hansen's son were properly deducted as business expenses in 2005.
Hansen's testimony regarding the tenant's duties was vague, incomplete, and conclusory. Though it appears that the tenant's duties around the home are in assisting the residents, the tenant's duties are not entirely clear to the court. While the nature of Hansen's business certainly contemplates that employees reside in the facility in order to assist the residents at all times, the facts before the court do not indicate that the tenant accepted the lodging as a condition of her employment by Hansen. Hansen has not established whether the conditions IRC section 119 are applicable and did not meet the evidential burden of IRC section 119 with respect to the tenant. Thus, Hansen may not deduct either the meals or the lodging provided to the tenant as a business expense.
B. Deductible Business Expenses
1. Transportation Expenses
IRC section 162 allows a taxpayer to deduct transportation expenses incurred in connection with a business. "Only such traveling expenses as are reasonable and necessary in *Page 16 
the conduct of the taxpayer's business and directly attributable to it may be deducted." Treas Reg section 1.162-2(a). Treasury Regulation section 1.162(b)(1) additionally provides that when a taxpayer travels to a destination and while at the destination engages in both business and personal activities, traveling expenses to and from such destination are deductible "only if the trip is related primarily to the taxpayer's trade or business."
Hansen claims $2,079 for the cost of mileage for her estimated 121 trips to Eugene in 2005. Hansen testified that all her trips to Eugene were for business, and Defendant agreed that the nature of Hansen's business required her to make frequent trips to Eugene. (Def's Ex G-2.)
The question is whether Hansen has met the burden of proof regarding her claimed mileage expenses. IRC section 274(d) imposes strict substantiation requirements for mileage expenses. In order for a taxpayer to deduct the miles traveled in her personal automobile as a business expense during a taxable year, a taxpayer must substantiate by adequate records or by sufficient evidence corroborating her own statement: (1) the amount of the expenditure; (2) the mileage for each business use of the automobile and the total mileage for all uses of the automobile during the taxable period; (3) the date of the business use; and (4) the business purpose of the use of the automobile. Treas Reg section1.274-5T(b)(6). While the Internal Revenue Service regulations do not require a specific form of record, the taxpayer should keep a diary, account book, trip sheet, or something similar, in which entries can be made while the *Page 17 
taxpayer has full present knowledge of the reasons for the travel.See Treas Reg section 1.274-5T(c)(2)(i).
 "A taxpayer is required by section 274(d) to substantiate a claimed expense by adequate records or by sufficient evidence corroborating the taxpayer's own statement establishing the amount, time, place, and business purpose of the expense. Sec. 274(d). Even if such an expense would otherwise be deductible, the deduction may still be denied if there is insufficient substantiation to support it. Sec. 1.274-5T(a)."
Boyd v. Comm'r, 83 TCM (CCH) 1253 (2002) (emphasis added).
The court does not dispute that Hansen's business requires that she make frequent trips to Eugene. However, a taxpayer may not ignore her substantiation obligations under IRC section 274(d). Hansen provided an estimation of her trips to Eugene based on the dates in which Eugene businesses have made debit charges to her bank account. The court does not find those bank statements to be sufficient evidence of the frequency or purpose of Hansen's trips to Eugene. The evidence presented is not a sufficient substitute for some kind of record created at the time of the travel when Hansen had full present knowledge of the date and reasons for the travel.
The court does find that Hansen is entitled to a transportation deduction expense of $1,385. This amount represents the estimated mileage for Hansen's trips to various grocery stores which were substantiated by receipts. The court finds that Hansen's frequent trips to the grocery store were primarily for business purposes.
2. Casual Labor
IRC section 162(a)(1) allows a business expense deduction for "a reasonable allowance for salaries or other compensation for personal services actually rendered." Thus, IRC section 162(a)(1) allows an employer to deduct the wages she pays to her employees for services actually rendered. Hansen claims a deduction of $5,340 for the cost of compensating casual *Page 18 
laborers. Hansen testified a few additional people helped at her business, and she would pay them an hourly wage, in cash, by making ATM withdrawals. Hansen issued a 1099 form to one of those additional laborers. Hansen recorded the hours other laborers worked on her calendar, but did not issue 1099 forms to them.
Defendant disallowed all casual labor costs finding that Hansen had not adequately substantiated her expenses. IRC section 6001 requires that taxpayers keep records. Taxpayers are thus required to provide "records showing that a person is entitled to deduct, credit, or capitalize basis in, items claimed in calculating tax liability. One of the elements showing entitlement to a deduction, credit, or basis is proof of payment of an amount." Rev Proc 92-71, 1992-35 IRB 17.
After reviewing the exhibits provided, the court finds that Hansen may deduct $2,285 for casual labor costs. This amount reflects the amount of wages reported on the one Internal Revenue Form 1099 issued as well as the recorded hours worked for two individuals as listed on Hansen's calendar. (Ptfs' Ex 13.) The court has disallowed $3,055 of Hansen's claimed casual labor expenses because Hansen did not keep adequate records.
3. Supply Expenses
IRC section 162 allows a business deduction for ordinary and necessary expenses of carrying on a trade or business. Hansen claimed a business deduction for supply expenses in the amount of $6,506. Defendant disallowed the entire amount claimed. In Hansen's claimed supply expense deduction was a $2,595 payment to "Luving Care," a senior referral service. That amount is 100 percent deductible as an ordinary and necessary business expense for a residential care facility like Hansen operates that seeks business through referrals. The remainder of Hansen's claimed supply expense is reduced for identified farm supplies or *Page 19 
unidentified expenses, resulting in a balance of $2,915 to be allocated between business and personal use.
4. License Expenses
The parties agree that Hansen is entitled to claim a $100 business deduction for the licensing fee incurred for her residential care facility operation. Hansen claimed an additional $50 as a license expense. That amount was unidentified and is not allowed.
5. Phone Line
OAR 411-050-0445(6)(a) requires that Hansen's home be equipped with a telephone that is in good working order and accessible for residents' use. Hansen testified that Qwest provided her land line telephone service. She submitted evidence stating that $745 was paid to Qwest. (Ptfs' Exs 5-26 through 5-28.) Because Hansen is required to provide telephone service for her residents, the entire $745 is an allowable business expense deduction.
C. Business Use of the Home Allocation
Generally, deductions for business use of the home (home office) require a portion of the dwelling be used exclusively for business. IRC section 280A(c)(1). However, Hansen's home office expenses are governed by IRC section 280A(c)(4) because she runs a licensed residential care facility out of her home. The standard for her home office expenses is not exclusive use, but regular use. IRC section 280A(c)(4)(A). Under IRC section 280A(c)(5), the taxpayer's deduction for expenses may not exceed the gross income from the care facility.
Under IRC section 280A(c)(4), Hansen's business expenses must be classified as direct or indirect. Direct business expenses will be allocated at 100 percent because they are of no personal benefit and are, therefore, properly deductible under IRC section 162. Indirect business expenses are those that benefit both the business and the home. Indirect expenses will be *Page 20 
allocated by a formula applied to the square footage of her home and hours for which that square footage is regularly employed for business purposes. IRC section 280A(c)(4)(C) states,
 "If a portion of the taxpayer's dwelling unit used for the purposes described in subparagraph (A) is not used exclusively for those purposes, the amount of the expenses attributable to that portion shall not exceed an amount which bears the same ratio to the total amount of the items allocable to such portion as the number of hours the portion is used for such purposes bears to the number of hours the portion is available for use."[8]
In Hansen's case, much of her home is a full time residential care facility, 24 hours a day, 365 days a year. By Hansen's calculation, 93.45 percent of her home is regularly used for business 100 percent of the year. By Defendant's calculation, 61.8 percent of Hansen's home is regularly used for business 100 percent of the year.
The court accepts Hansen's calculation of the home's total square footage of 3,662 square feet.[9] The court finds that the entire main floor of Hansen's house except for her bedroom and laundry area is regularly used for her business. The court additionally finds that the unfinished portion of her basement that functions as a storage area and houses the furnace and hot water heater is regularly used for Hansen's business. Pursuant to the above analysis regarding Hansen's son and the tenant, their bedrooms, located in the basement of the home, as well as their bathroom, have been excluded. The laundry area is allowed as Hansen testified that the laundry area was exclusively for her business.[10]
The court thus calculates the square footage of *Page 21 
the home regularly used for Hansen's business to be 2,454 or 67 percent of Hansen's home. Some indirect expenses incurred for Hansen's business will be allocated at 67 percent as discussed.
1. Expenditures Subject to Allocation According to Business Useof the Home
a. Depreciation
IRC section 263 disallows any deduction for capital expenditures, which are generally defined as "permanent improvements or betterments made to increase the value of any property or estate." A taxpayer is permitted to recover the cost of the capital expenditure over the life of the capital investment as specified by the IRC. The cost recovery is labeled depreciation. The parties agree that the specified life for the portion of Plaintiffs' property used for business purposes is 39 years.
The parties approximately agree that the house, including carport, had a real market value of $231,153.[11] The parties disagree as to the value of the outbuildings. Plaintiffs' representative, Ripke, admits that he made an error when he divided a $60,000 value equally among three outbuildings. Defendant did not include the value of the outbuildings in its depreciation calculation.
The court, like Defendant, does not include the value of the outbuildings including a barn in its depreciation calculation because it was not presented with evidence of value or actual use of the outbuildings for Hansen's business. Defendant's computed depreciation expense in the amount of $5,927 which the court accepts is subject to allocation for business use. (Def's Ex G-2.) *Page 22 
b. Repair Expenses
Hansen claims a business expense deduction of $15,611.81 for repairs during tax year 2005. (Ptfs' Ex 11-6.) Based upon a disagreement over substantiation, Defendant allowed $1,300 as a business expense deduction for a repair to Hansen's septic system. (Def's Ex G-4.)
Repairs may be deducted as business expenses if the repairs are "incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient operating condition." Treas Reg section 1.162-4 (1960). Repair expenses are current deductions and do not increase the taxpayer's basis in the property. Id.
As a general rule under IRC section 263(a)(1) deductions are not allowed for "permanent improvements or betterments made to increase the value of any property or estate." IRC section 179 provides an exception to the general rule of IRC section 263, by allowing a taxpayer to elect to take certain capital expenditures as current expenses, however IRC section 179(d)(1) — defining property allowed under this section — excludes property used for lodging. Thus, capital expenditures which constitute improvements to Hansen's home could not be currently deducted under IRC section 179.
The facts before the court do not allow the court to determine independently whether the drain field constitutes a capital expense. Defendant allowed the drain field expenses as a repair cost, and the court will follow Defendant's findings. Additionally, OAR411-050-0445(2)(b), a rule governing the standards of Hansen's facility, requires non-municipal sewage disposal systems to be in good working order.
The court conducted a thorough review of Hansen's repair cost ledgers. (Ptf's Exs 11-3 through 11-6). Many of the charges, such as hardware store purchases, appear quite small and may reasonably constitute incidental repairs to maintain Hansen's home in habitable condition. *Page 23 
OAR 411-050-0445(1) requires that Hansen's facility meet state and local housing codes, be clean, and in good repair The court has disallowed all expenses listed in Hansen's repair ledger that are related to Plaintiffs' farming operations and not related to the residential care facility. The court allows $10,303 in repair costs; this amount is subject to allocation by the percentage of the home that is regularly used for business.
c. Landscaping
Hansen claims $1,000 of expenses for landscaping. OAR 411-050-0445(1)(b) requires that the grounds of an adult foster care facility be well maintained. Adult foster homes must also have adequately maintained exterior exits such that they are suitable to the condition of the residents. OAR 411-050-0445(1)(c). The rules governing the exterior maintenance of adult foster homes indicate that some landscaping expenses are "ordinary and necessary" to operating an adult foster home. In order to deduct these expenses, the yard maintenance for an adult foster home must constitute an "ordinary and necessary" expense incurred during the taxable year in carrying on the business. IRC § 162.
Hansen did not provide any explanation of the services performed, thus the court cannot determine if the landscaping services provided were "ordinary and necessary" business expenses. Hansen's adult foster home is situated on a significant amount of acreage, and the court cannot determine from the information provided whether the services were performed in an area of the yard actually used by Hansen's residents. The claimed landscaping expenses are disallowed.
D. Allocation by Occupancy of the Home
During 2005, the home had a total of nine occupants. Five of these occupants were residents of Hansen's licensed residential care facility. The other four occupants were Plaintiffs, Plaintiffs' teenage son, and one tenant. Hansen contends that expenses subject to this method of *Page 24 
allocation should be allocated at a ratio of 7:9, excluding her and her husband. Defendant maintains that the allocation should be 5:9, counting only the residential care residents.
As a general rule, under IRC section 262(a) no deduction is allowed for personal, living, and family expenses. Thus, Hansen and her husband are properly excluded from the occupancy ratio. As previously discussed, until May of 2005 Hansen's son was a minor, and Hansen had a legal obligation to provide for him. Expenses to support Hansen's minor son were personal expenses, not business expenses.
Also, as previously discussed, Hansen's arrangement with her son and tenant did not satisfy IRC section 119, which would have allowed Hansen's son and tenant to exclude the value of the meals from their income and would also have allowed Hansen business expense deductions for related grocery expenses. Having failed the tests of IRC section 119, Hansen is not otherwise allowed a business expense deduction for those groceries because those expenses do not meet the definition of "ordinary and necessary" business expenses under IRC section 162.
Based on the court's analysis, the proper allocation for business expense deductions subject to allocation using an occupancy ratio of the home is 5:9.
1. Expenses Subject to Occupancy Ratio Allocation
a. Utilities
Hansen claims a business expense in the amount of $7,674 for the following items categorized under the heading of utilities: garbage, electric, internet, cable television, telephone land line and her personal cellular phone. (Ptfs' Ex 5-28.) Defendant allowed $3,128 for electric (70 percent of the total claimed expense), and allowed, subject to the occupancy ratio, the total claimed expense in the amount of $748 for garbage and $1,242 for cable television. (Def's Exs G-4; G-5.) *Page 25 
After a review of the claimed utility expenses, the court previously stated that it concluded that 100 percent of the cost of the telephone land line is an allowable business expense. Further, the court concludes that Hansen failed to show that her personal cellular phone was not primarily used for personal, rather than business use. That expense in the amount of $774 is disallowed. The balance of the claimed utility expenses in the amount of $6,165 is allowed subject to allocation using the occupancy ratio of 5:9.
b. Groceries and Household Supplies
Hansen claims expenses of $26,610 for food, household supplies and the cost of takeout meals for the residents. (Ptfs' Exs 5-5 through 5-11.) Defendant allowed substantiated food and household supply expenses of $13,382. (Def's Ex G-5; G-6.)
The court conducted a thorough review of the exhibits submitted including receipts and Hansen's ledgers. Hansen's receipts totaled $23,448. (Ptfs' Ex 5-11). The court then deducted from that amount all cash-back transactions, unidentified expenses, and certain miscoded items to reach a final allowed amount of $19,927. The court did not allow any expenses labeled "takeout meals" because those amounts were not adequately identified nor substantiated. The allowed amount of $19,927 for food and household supply expenses is subject to allocation based on occupancy of the home. Information provided by Defendant indicates that the national average for 2005 grocery expenses, including takeout meals, was $2,372 per person. (Def's Ex G-374). The substantiated grocery and household supply expenses found by the court are very comparable, at $2,214 per person.
The court does not disagree that the nature of Hansen's business requires her to make significant expenditures for groceries and household supplies. Unfortunately for Hansen, the court cannot allow expenses that are not adequately substantiated. Hansen has an obligation to *Page 26 
maintain adequate records to substantiate her claimed business expenditures. IRC section 6001 and Rev Proc 92-71, 1992-35 IRB 17. Hansen's failure to fulfill that obligation leads to the court's disallowance of claimed expenses.
c. "Comfort Dog" Expenses
Hansen claims $1,856 in expenses she labels "comfort dog." (Ptfs' Ex 6.) Hansen testified that, although her dogs had not received formal evaluation or training as therapy animals, their presence remains very beneficial to the residents.
In order to deduct these expenses, the maintenance of such animals in an adult foster home must constitute an "ordinary and necessary" expense incurred during the taxable year in carrying on the business. IRC § 162. To be "ordinary" the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved.Deputy, 308 U.S. at 495.
In maintaining an adult foster home, Hansen must comply with state rules and regulations. OAR 411-050-0445[12] is an extensive rule that governed facility standards for adult foster homes during the tax year at issue. OAR 411-050-445(2)(e) demanded that sanitation for household pets be adequate and that caregivers must maintain proof of rabies and other required vaccinations on the premises. Such a provision in the Oregon Administrative Rules indicates that maintaining animals in an adult foster home is "ordinary" and that at least some expenses for the animals, such as veterinary bills, are "necessary" in conforming to state standards. Thus, the court will allow $632 which is the clearly identified veterinary costs. This amount will be subject to allocation based on the occupancy of the home ratio. *Page 27 
E. Hansen's Personal Deductions
1. Medical Expenses
IRC section 213 allows an itemized deduction for medical expenses paid or incurred by the taxpayer for care of the taxpayer. Medical expenses are defined as expenditures for the diagnosis, cure, relief, or treatment of disease of bodily malfunction, for medical insurance, for prescription drugs, and for transportation and lodging while seeking care. IRC §213(d)(1)(A)-(C).
Defendant allowed a medical expense deduction in the amount of $8,059. (Ptfs' Ex 8-1.) Using references to debit card transactions or checks, Hansen documented medical expenses in the amount of $9,722. (Ptfs' Ex 8-3.) To that amount, Ripke added an amount for prescription drugs that was allowed by Defendant, but not claimed by Hansen. In computing the amount to add for prescription drugs, Ripke made a subtraction error in the total cost of prescription drugs purchased at Tiffanys; that amount was $41. Hansen's total amount of claimed medical expenses was $10,334 which must be reduced by Ripke's error ($41).
After a careful review of Hansen's evidence, the court allows Hansen an itemized medical expense deduction in the amount of $10,293.
F. Hansen's Oral Request for the Court to Waive Penalties and Interest
At trial, Hansen made an oral request that the court waive the penalties and interest assessed by Defendant. Pursuant to ORS 314.402, Defendant assessed Plaintiffs a substantial understatement penalty, totaling $1,339. ORS 314.402(2)(a) provides that a substantial understatement of taxable income exists if the amount of the taxpayer's understatement exceeds $15,000. By Defendant's calculations, Plaintiffs' understatement totaled $178,094 — an amount that exceeds the $15,000 statutory trigger — thus the penalty was properly assessed. However, *Page 28 
ORS 314.402(6) grants Defendant the authority to waive all or any part of the penalty on a showing by the taxpayer that there was "reasonable cause for the understatement, or any portion thereof, and that the taxpayer acted in good faith." Defendant has not waived these fees and maintains that Plaintiffs should be subject to the substantial understatement penalty.
The court cannot "substitute its own view for the administrator's judgment" when review is statutorily given to Defendant. Rogue River Packv.Dept. of Rev., 6 OTR 293, 301 (1976). The court's review of Defendant's decision is thus limited to an inquiry as to whether Defendant's conduct constituted an abuse of discretion. The court reviews Defendant's actual actions and the underlying reasons that formed the basis in taking such actions. "An abuse of discretion on the part of the administrative agency is found where the agency does not act upon the facts presented to it or fails to obtain the factual data necessary for a proper result." Id.
Plaintiff submitted no evidence to support its allegations that Defendant failed to "act upon the facts presented to it." Id. There was no record for the court to review and determine whether or not Defendant failed "to obtain the factual data necessary" to make a reasoned decision. Id. No evidence was submitted to the court to use in its evaluation of Defendant's actions and determination. The court was not presented with evidence to conclude whether Defendant's conduct was an abuse of discretion. Hansen did not meet her burden of proof because she failed to submit any evidence to support her verbal request.
Hansen also requested a waiver of interest on her deficiency. ORS305.220(1) provides for the imposition of interest in the case of a deficiency or delinquent return. Defendant's imposition of an interest charge is thus required by statute. Hansen has not cited any legal authority to allow the court to grant her request to waive the assessed interest. *Page 29 
 III. CONCLUSION
After careful review of the testimony and evidence, the court concludes that Plaintiffs have substantiated some of their claimed business and personal deductions. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs are allowed the following business or personal deductions for tax year 2005:
Direct Expenses Allocable at 100 percent:

 Transportation Expenses: $1,385
 Casual Labor: $2,285
 Supplies: $2,595
 License Fee: $100
 Telephone Landline: $745

 Indirect Expenses Allocable at Business Use (67 percent):
 Depreciation: $5,927 Allowed deduction after allocation: $3,770
 Property Insurance: $851[13] Allowed deduction after allocation: $570
 Repairs: $10,303 Allowed deduction after allocation: $6,903
 Property Taxes: $729[14] Allowed deduction after allocation: $488
 Mortgage Interest: $35,411[15] Allowed deduction after allocation: $23,725
 Supplies $2,915 Allowed deduction after allocation: $1,953
 *Page 30 
 Indirect Expenses Allocable by Occupancy of the Home (5:9):
 Utilities: $6,165 Allowed deduction after allocation: $3,425
 Grocery Expenses: $19,927 Allowed deduction after allocation: $11,070
 "Comfort Dog:" $632 Allowed deduction after allocation: $351

 Itemized Personal Deduction (before 7.5 percent of adjusted grossincome):
 Medical: $10,293; and

IT IS FURTHER DECIDED that Hansen's verbal request that the court waive penalty and interest is denied.
Dated this day of September 2009.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanner onSeptember 29, 2009. The Court filed and entered this document onSeptember 29, 2009.
[1] Hansen adjusted her claimed amounts for business and personal medical expenses prior to trial. Hansen's current claims are not the claimed deductions reported on Plaintiffs' original 2005 income tax return.
[2] Defendant's allowed amounts are listed in Defendant's Explanation of Adjustments Made dated July 2, 2008. (Def's Exs G-1 through G-8 for business expenses and H-1 through H-3 for personal expenses.) Defendant made no further adjustments to the amounts allowed.
[3] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to the 2003 version.
[4] All references to the IRC and accompanying regulations are to the 1986 code, and include updates applicable to 2005.
[5] IRC section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."
[6] IRC section 212 provides in relevant part for the "deduction [of] all the ordinary and necessary expenses paid or incurred during the taxable year — (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income[.]"
[7] The court has not reached the question of whether a bona fide employer-employee relationship existed between Plaintiff and her son. However, the court notes that whether an individual is an employee is generally a question of fact, involving the application of common law agency principles. Haeder v. Comm'r, 81 TCM (CCH) 987, WL 40100 (2001). Where a family relationship is involved, "the facts require close scrutiny to determine whether a bona fide employer-employee relationship existed and whether the payments received were made on account of the employer-employee relationship or the family relationship." Id.
[8] Subparagraph (A) pertains to taxpayers who use a portion of their dwelling on a regular basis to carry on the "trade or business of providing daycare to children, individuals who have attained age 65, or for individuals who are physically or mentally incapable of caring for themselves."
[9] Defendant's total square footage calculation of 3,128 is based on the Lane County Assessor's records. The Lane County Assessor or one of its representatives did not testify. The court accepts Plaintiff's floor plan which identified each room and provided room dimensions. (Ptfs' Ex 10-3.)
[10] The square footage of the entire main floor will be allowed except for Plaintiffs' bedroom. The entire square footage of the finished portion of the basement will be excluded. Because the laundry room dimensions were not provided, the square footage of the laundry room facility located on the main floor is substituted for the square footage of the laundry room located in the basement because the business purpose was undisputed.
[11] Ripke computed a value of $291,053 for the residence. (Def's Ex A-18.) Defendant's real market value agrees with the county tax records. The court will accept $231,153.
[12] In 2006, OAR 411-050-0445 was amended and the relevant subsection, (2)(e), was moved to OAR 411-050-0444.
[13] Plaintiffs' claims an amount less than Defendant allowed on audit; that amount is allowed.
[14] Parties agree on the amount of the allowable deduction.
[15] Parties agree on the amount of the allowable deduction.